In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jonathan C. LEWIS, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Jonathan C. LEWIS, Respondent.

Supreme Court

*No. 02–0870–D. Decided October 2, 2002.*

2002 WI 115

(Also reported in 651 N.W.2d 734.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Jonathan C. Lewis and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12[1] setting forth findings of fact and conclusions of law regarding Attorney Lewis' professional misconduct in connection with his representation of two parties with conflicting interests. Attorney Lewis and the OLR stipulated to a 60–day suspension of Attorney Lewis' license to practice law in Wisconsin.

¶ 2. We approve the stipulation and adopt the stipulated facts and conclusions of law. We agree that Attorney Lewis' misconduct warrants the suspension of his license to practice law. We accept the parties' stipulation that 60 days is appropriate discipline for this offense.

---

[1] SCR 22.12 provides: Stipulation.

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

(3) If the supreme court rejects the stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

All subsequent references will be to the current version of the supreme court rules unless otherwise noted.

¶ 3. Attorney Lewis has no previous disciplinary history. He is a Minnesota lawyer. He was admitted to practice in Wisconsin in December 1996. His license to practice law in Wisconsin has been under administrative suspension since June 8, 1999, for non-compliance with CLE requirements. The parties agree that the Wisconsin disciplinary rules apply in this matter.

¶ 4. The current disciplinary proceeding stems from Attorney Lewis' representation of two parties to a complicated business transaction where the parties had conflicting interests.

¶ 5. The facts regarding the underlying business relationships and transactions, as derived from the parties' stipulation, are a necessary backdrop to assessing Attorney Lewis' actions. In 1993 John Strum, a Wisconsin resident, incorporated a company called Katusha for the purpose of conducting trade deals with a Russian company called SKIF, which was owned by a Russian businessman named Vladimir Zhirkov. Strum and Zhirkov were acquaintances.

¶ 6. In 1995 James Stephenson and Neale Caflisch entered into a contract to purchase all the shares of Katusha (the "Sale Agreement"). The Katusha shareholders, who consisted of Strum and nine other individuals, received promissory notes totaling $200,000, which were to be paid at two future dates.

¶ 7. For purposes of this disciplinary opinion it is sufficient to state that the Katusha sale basically meant that Stephenson and Caflisch acquired the rights to the business relationship with Zhirkov and SKIF. The Sale Agreement provided that Strum would incorporate a new business entity (Katusha II), which would assume all the pre-existing contracts with SKIF. However, Katusha II was never legally incorporated because Strum never paid the filing fee. Strum did open bank accounts

43

for Katusha II and otherwise proceeded as though the new company was a legal entity. He also continued to consult with the new owners of Katusha, but their relationship quickly deteriorated.

¶ 8.   It appears that the difficulties giving rise to Attorney Lewis' involvement in this matter began when a series of sugar deals went wrong, badly straining the relationship between the new owners of Katusha and Zhirkov. The new owners believed Strum was actively undermining their relationship with Zhirkov. In addition, Katusha received demand letters for debts that allegedly should have been assumed by Katusha II.

¶ 9.   Ultimately, the new owners of Katusha refused to pay the promissory notes held by Katusha's original shareholders. They stated that they were rescinding their purchase of Katusha, alleging that the former shareholders had breached the Sale Agreement. About the same time, SKIF/Zhirkov transferred $900,000 to an account where it was to be held in trust pending a sugar shipment by Katusha to SKIF. A complex series of transactions ensued. Again, for purposes of this opinion it is sufficient to state that the sugar was never delivered to SKIF and the $900,000 was deposited into an account located in the British Virgin Islands, allegedly owned by a corporation with ties to Katusha's new owners.

¶ 10.   At this point, Strum approached Attorney Lewis and asked Attorney Lewis to represent him in an action against Stephenson and Caflisch regarding their rescission of the Sale Agreement and their failure to pay the promissory notes.

¶ 11.   Shortly thereafter, at Strum's suggestion, Attorney Lewis also agreed to represent Zhirkov and

SKIF in an action to try to recover the $900,000. Herein lies the crux of the disciplinary proceeding now before this court.

¶ 12.   At no time did Attorney Lewis obtain written consent from either Zhirkov or Strum regarding the potential or actual conflict relating to his representation of both parties. In his capacity as Zhirkov's and SKIF's attorney, Attorney Lewis pursued settlement negotiations for Zhirkov. However, it is undisputed that one of the provisions in a proposed settlement agreement drafted by Attorney Lewis would have substantially benefited Attorney Lewis' other client, Strum. Attorney Lewis also drafted a complaint on behalf of Zhirkov that named Katusha, Stephenson, Caflisch, and their associates, as defendants. According to the OLR complaint filed in this matter, Attorney Lewis led Zhirkov to believe he had filed the complaint when, in fact, it was not filed.

¶ 13.   Eventually, the nine other shareholders of Katusha filed a complaint against Stephenson and Caflisch. Stephenson and Caflisch responded with several counterclaims, including a claim that Strum had conspired to damage them by interfering in the contract between Katusha and SKIF.

¶ 14.   In his capacity as Strum's attorney, Attorney Lewis filed an Answer and Counterclaim alleging that Stephenson and Caflisch owed Strum money for the unpaid promissory notes. Lewis also represented Strum at his deposition, where opposing counsel twice commented that a conflict of interest existed with respect to Lewis' representation of both Zhirkov/SKIF and Strum.

¶ 15.   As the litigation involving Strum proceeded, Attorney Lewis continued to represent SKIF and Zhirkov in settlement negotiations, despite the fact that

45

it was clear that Strum would be a potential defendant in any litigation filed by Zhirkov/SKIF against Katusha and Katusha II.

¶ 16.    In addition, both matters involved Stephenson and Caflisch, such that obtaining damages on behalf of one client would mean less money available for the other client to collect.

¶ 17.    On March 25, 2002, the OLR filed a complaint against Attorney Lewis, alleging five counts of attorney misconduct relating to Attorney Lewis' representation of the two parties. Specifically, OLR alleged that:

> (1) by simultaneously representing both Strum and Zhirkov in related representations where his representation of one client was materially limited by his representation of the other client, [Lewis] violated SCR 20:1.7(b);[2]

> (2) by failing to file a lawsuit and pursue litigation on behalf of SKIF, [Lewis] failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3;[3]

---

[2] SCR 20:1.7(b) provides:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[3] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

46

(3) by failing to keep Zhirkov or other SKIF representatives reasonably informed about the status of the representation, and by failing to promptly comply with the client's reasonable requests for information, [Lewis] violated SCR 20:1.4(a);[4]

(4) by leading Zhirkov to believe that he had filed an action on SKIF's behalf when he had never filed the complaint that Zhirkov signed, [Lewis] engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of SCR 20:8.4(c);[5] and

(5) by failing to provide a written response to this grievance . . . [Lewis] acted contrary to [former] SCR 22.07(2) and [former] SCR 21.03(4);[6] and, by failing to respond to . . . [OLR's subsequent] request for addi-

---

[4] SCR 20:1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[6] Former SCR 22.07(2) provided:

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

Former SCR 21.03(4) provided: "(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator."

47

tional information, and by failing to provide billing statements . . . [Lewis] has violated SCR 22.03(6) . . . .[7]

¶ 18.   In April 2002 the OLR and Attorney Lewis executed a stipulation pursuant to SCR 22.12. In addition to stipulating to the facts as set forth above, the parties stipulated to discipline in the form of a 60–day suspension of Attorney Lewis' license to practice law in Wisconsin. The OLR is not seeking imposition of costs in this matter.

¶ 19.   We have reviewed this matter and now adopt the findings of fact and conclusions of law set forth in the parties' stipulation. We agree that Attorney Lewis' conduct, as set forth in the stipulation and in the OLR complaint, reflects a serious breach of professional conduct and warrants suspension of Attorney Lewis' license to practice law. We accept the parties' conclusion that a 60–day suspension of his license is appropriate discipline for his professional misconduct.

---

[7] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

Initially, Attorney Lewis failed to file a written response to SKIF's grievance. He also failed to respond to OLR's second request for a response to the grievance. After a third request from OLR, Attorney Lewis did provide a written response but failed to respond to a request for additional information in a timely manner. He also failed to provide OLR with requested billing information. These actions gave rise to the fifth count against Lewis.

¶ 20.  IT IS ORDERED that the license of Jonathan C. Lewis to practice law in Wisconsin is suspended for a period of 60 days, effective the date of this order. The OLR indicates it is not seeking imposition of costs in this matter.

¶ 21.  IT IS FURTHER ORDERED that Jonathan C. Lewis comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.